N THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRENNAN W. MCAULEY,

        Plaintiff,

v.                                  CIVIL ACTION NO. 3:23-cv-233

FCA US LLC,

**SERVE**:
CT Corporation System
Registered Agent
4701 Cox Road, Suite 285
Glen Allen, Virginia 23060

and

THOR MOTOR COACH, INC.
**SERVE:**
Clerk of the State Corporation Commission
Statutory Agent for Thor Motor Coach, Inc.
1300 East Main Street
Tyler Building, 1st Floor
Richmond, Virginia 23219

and

CAMPING WORLD RV SALES, LLC,
t/a CAMPING WORLD RV SALES-THORNBURG
**SERVE:**
C T Corporation System
Registered Agent
4701 Cox Road, Suite 285
Glen Allen, Virginia   23060

        Defendants.

1

## **COMPLAINT**

COMES NOW the plaintiff, BRENNAN W. McAULEY, by counsel, and moves for judgment against the defendants on the grounds and in the amounts as hereinafter set forth:

### **PRELIMINARY STATEMENT**

1.      This case involves claims asserted under the Virginia Uniform Commercial Code, the Magnuson Moss Warranty Act, and the Virginia Motor Vehicle Warranty Enforcement Act.

### **PARTIES**

2.      Brennan McAuley (Mr. McAuley) is a citizen of the United States and a natural person domiciled and residing in Virginia and is a consumer and buyer within the meaning of applicable laws.

3.      Defendant, Thor Motor Coach, Inc. ("Thor"), was at all times relevant a corporation doing business in Virginia and elsewhere and is the manufacturer of the subject camper VAN (hereinafter "the VAN") that Plaintiff acquired from Defendant Camping World VAN Sales LLC d/b/a Camping World VAN Sales (hereinafter "CW Thornburg") located in Thornburg, Virginia. Thor has its principal place of business in and is a citizen of Iowa and was, at all times relevant, engaged in the business of selling and servicing recreational motor vehicles through its authorized dealerships and agents, including CW Thornburg that it maintains in Virginia and elsewhere.

4.      Defendant FCA USA LLC (hereinafter "FCA") was at all times relevant a corporation doing business in Virginia and elsewhere and is the manufacturer of the VAN's 2022 Ram ProMaster chassis, which includes the engine and drive train of the vehicle, delivered to Thor, which added additional features, mostly cosmetic, to make the final product, called a 2022

2

Thor Tellaro Class B VAN, which came with an FCA warranty on the chassis, and a separate warranty from Thor on certain parts of the VAN not part of the Ram ProMaster chassis.

5. Pursuant to the FCA warranty that covers the VAN's Ram ProMaster chassis, FCA has established numerous authorized dealers, including Shelor Motor Mile in Christiansburg, Virginia, and other FCA authorized dealerships located within the district of this court, to service the chassis for any necessary repairs covered by its warranty.

6. Plaintiff acquired the subject VAN from CW Thornburg, which at all times relevant was a supplier, merchant and an authorized agent and representative of Thor in Virginia. Camping World VAN Sales LLC is a foreign limited liability company whose principal office is in Bowling Green, Kentucky but which does substantial business in the Commonwealth of Virginia through it retail sales locations, one of which is in Spotsylvania County known as CW Thornburg. At all times relevant, CW Thornburg was authorized by Thor to act for it as one of its authorized agents and representatives in Virginia in all respects related to the sale of the vehicle involved in this case and the attempted repairs and service work for those areas of the vehicle covered by the Thor Warranty.

7. The vehicle was assembled by Thor using the 2022 Ram ProMaster chassis supplied by FCA.

8. Upon information and belief, Thor and CW Thornburg entered into a retail sales and service agreement whereby CW Thornburg agreed to allow Thor to control certain parts of its operations under various contractual terms.

9. Thor and FCA have engaged in substantial business activities in Virginia involving millions of dollars of goods and services being advertised and sold in Virginia, both by

3

shipping into this state and distributing in this state its new motor vehicles and chassis, and by its continuing substantial business activity with its Virginia agents and dealers for them to perform warranty repair and service work in Virginia for and on Thor's and FCA's behalf at their authorized repair facilities located in Virginia.

10. Presently CW Thornburg has motor vehicles manufactured by Thor with FCA chassis on its retail lots for sale, which Thor shipped to CW Thornburg for the purpose of advertising and selling the subject motor vehicle to the public in Virginia. Thor has had a continuing business relationship with at least three authorized sales and repair facilities in Virginia.

11. Thor's internet website lists CW Thornburg as an authorized retail seller and service of Thor motor vehicles. CW Thornburg is one of at least three retail sales locations in Virginia where Thor engages daily in sales and service through its local authorized sales and service agents and representatives.

## JURISDICTION

12. Jurisdiction exists with this court because a federal claim exists in which there is more than $50,000 in controversy under 15 U.S.C. § 2301 et seq., invoking 28 U.S.C. § 1331, and the amount in controversy is more than $75,000 and is between citizens of different states, invoking 28 U.S.C. § 1332. This court also has supplemental jurisdiction of the state law claims regarding the same transaction and events pursuant to 28 U. S.C §1367(a).

13. The VAN which is the subject of this dispute, was acquired by the Plaintiff in Virginia and was defective when acquired. Ineffective repair attempts were made to the VAN by Thor's and FCA's authorized agent and representative dealership in Virginia. The dealership

where the relationship of the parties arose is in Thornburg, Virginia. The warranty obligations of Thor and FCA were received by the Plaintiff during the purchase of the VAN in Virginia, and Thor and FCA interacted directly with the Plaintiff in Virginia.

## STATEMENT OF FACTS

14. This case involves a defective 2022 Thor Tellaro, Class B camper VAN that Thor and FCA warranted, but were not able to repair within a reasonable amount of time and whose warranty and contract of warranty these defendants breached.

15. On or about November 20, 2022, relying on the express oral, implied and written warranties from Thor and FCA, the plaintiff, Mr. McAuley entered into an agreement[1], which was a consumer transaction where he agreed to acquire the VAN from Thor's retail sales outlet, defendant CW Thornburg, in return for the new VAN and Thor's and FCA's promise/warranty to repair or replace any covered defect in the 2022 Thor Tellaro, VIN # 3C6MVANUGXME590384 ("the VAN"). The VAN is built on the FCA RAM ProMaster chassis, whose total sales price was $99,545.25 (inclusive of sales tax of $3,963.00, filing fee of $88.25, processing fee of $589.00). Buyer's Order attached as **Exhibit 1**. Plaintiff paid $12,000.00 down, plus received $8,000 credit for the Ram pickup truck he traded in, and CW Thornburg signed a Retail Installment Sale Contract (RISC) to loan Mr. McAuley the balance of the sale price ($87,545.25), for 240 monthly payments of $718.16 beginning December 20, 2022. This RISC was assigned by defendant CW Thornburg to Bank of America, NA. **Exhibit 2.**

---

1 The terms "agreement" and "contract", as used herein, are not synonymous and are used as those terms are separately defined in the Uniform Commercial Code. Va. Code §8.1A-201(3) & (12). Under §8.1A-201(12) "contract", as opposed to "agreement", means the total legal obligation that results from the parties' agreement as determined by the Uniform Commercial Code as supplemented by any other applicable laws.

5

16. Beginning about two weeks after delivery, Mr. McAuley discovered the VAN did not conform to the contract as there were defects which, after a reasonable number of repair attempts, Thor and FCA were unable to conform to the warranties that came with the VAN; i.e. the roof/ceiling fan/vent leaked, damage to plumbing due to CW Thornburg's failure to winterize the VAN while in its possession for repair; damage to the plumbing from the various repair attempts; a cracked pump and backward filter; and the FCA engine failed on him and the steering locked up while driving on Interstate 81 in Virginia at which time it was towed to FCA's authorized dealer, Shelor Motor Mile Ford in Christiansburg, Virginia ("Shelor"), where the VAN has been sitting unrepaired since January 1, 2023

17. At the time the plaintiff took delivery of and accepted the VAN he was unaware of the defects and nonconformities because of the difficulty of discovery and because some of the problems had appeared after the purchase of the vehicle.

18. Soon after discovering the defects and nonconformities, the plaintiff took the vehicle to the Thor and FCA authorized dealer to have the nonconformities corrected. Three or more repair attempts have failed to correct the leaking and other issues resulting from the leaking conditions in the VAN.

19. Furthermore, the steering and engine nonconformities in the VAN's chassis have not been corrected after over thirty (30) days in the shop for repair, all of which occurred within eighteen months of delivery of the VAN to Mr. McAuley.

20. Defendants FCA and CW Thornburg received written notice of the nonconformities and revocation of acceptance of the VAN if the nonconformities were not

repaired within 15 days from Mr. McAuley on about January 27, 2023, and Defendant Thor received the same written notice January 30, 2023.

21. About a month after receipt of his written notice to the defendants the VAN's nonconformities were not repaired, thus on or about 2/27/2023 Mr. McAuley declined further repairs and demanded his damages or a buy back of his vehicle, as noted in his notice letter, which demand was never complied with by any of the defendants.

22. The defects and nonconformities continue to exist and substantially impair the vehicle's use and market value to the plaintiff, who has used it for his personal use, and who has properly used and serviced the vehicle while it has been in his possession.

23. At this time, the vehicle is in substantially the same condition as when it was delivered to the plaintiff, except for repairs for damages done to the vehicle by the defendant's agents or authorized repair facilities, and damages caused by the defects and nonconformities and damages made by the dealer.

24. The vehicle, as accepted, has a substantially reduced value to the plaintiff.

25. In his letter of January 26, 2023, the plaintiff revoked his acceptance of the VAN and asked the defendants to return the purchase price and all other damages sustained and recoverable under Virginia law, if they could not fix it. The defendants have refused to do this.

26. One of the purposes of Thor's and FCA's warranty was to get the VAN fixed within a reasonable amount of time and within a reasonable number of repair attempts if a nonconformity arose.

27. Plaintiff contacted the defendants repeatedly to attempt to resolve his ongoing issues. As a result, the defendants received multiple notices and had multiple opportunities to cure or repair the VAN and failed to do so.

## COUNT I
## BREACH OF WARRANTY AND REVOCATION OF ACCEPTANCE
### (Against all Defendants)

28. The allegations and claims of the above paragraphs are incorporated as if fully stated herein.

29. This claim is for breach of express and implied warranties and contract of warranty by the defendants for plaintiff's damages, or for revocation of acceptance and a full refund under Virginia Code §8.2-608.

30. As a result of the above facts and allegations and failure to repair the vehicle in a reasonable period of time the defendants, jointly and severally, breached their contract, agreements, and warranties with the plaintiff causing him a financial loss damages since the vehicle was not worth what he paid for it at the time of sale.

31. At all times relevant, CW Thornburg was a supplier and merchant and an authorized agent and representative of Thor. CW Thornburg was authorized by Thor to act for it in all aspects related to the sale and warranty repair work performed or attempted on the subject vehicle. Repair attempts on the VAN were made by CW Thornburg.

32. At all times relevant Shelor was an authorized agent and representative of FCA for warranty repair purposes. Shelor was authorized by FCA to act for it in all aspects related to

the sale and warranty repair work performed or attempted on the subject vehicle. Repair attempts on the VAN's chassis were made by Shelor.

33. In all respects, the plaintiff substantially if not completely performed his obligations under the VAN's warranty from Thor and FCA and these defendants did not perform their obligations, as set forth herein.

34. Because of the contract and warranty-covered defects, the plaintiff contacted the defendants in writing and notified them of the numerous defects, and at the defendants' requests and otherwise delivered the VAN to the defendants or their respective authorized dealers beginning shortly after the sale.

35. Thor's warranty on this VAN proclaims that Thor warrants the owner for a period of 24 months from delivery to the first owner or 30,000 miles, whichever comes first, and that defects in materials and workmanship will be repaired or replaced.

36. FCA's Basic Limited Warranty on the VAN's chassis warrants to the owner for a period of 36 months from delivery to the first owner or 36,000 miles, whichever comes first, that defects in materials and workmanship will be repaired or replaced.

37. There are two basic portions of a vehicle like the VAN: the chassis, and "the box" which is the body structure mounted on the chassis by the VAN manufacturer, which in this case is Thor. Despite Thor's warranty against defects on the non-chassis portion of the VAN, the portion of the VAN that Thor warranted was plagued with numerous and substantial defects in materials and workmanship that are the fault of Thor or negligent repairs made by its authorized dealer, defendant CW Thornburg.

38. Thor promised the Plaintiff that a "repair or replacement" would be provided to him if a defect was found. Even though several defects were found, and Thor was given numerous chances to remedy the defects, Thor failed to repair those defects in the VAN and failed to replace the VAN, despite numerous complaints, opportunities, and multiple durations of time to comply with Thor's obligation.

39. FCA also warranted the chassis, and despite its promise to repair that and chassis defect in materials or workmanship in its warranty, it and its authorized dealer failed to do so in a reasonable period of time.

40. Despite Thor's and FCA's obligations, when the plaintiff complained of the inability of these defendants to repair the vehicle's defects, the defendants did not repair, replace, or repurchase the subject vehicle.

41. As a result of the above, each defendant breached its express and implied warranties, contract of warranty and/or to the plaintiff.

42. Instead of performing as represented, the defendants did not repair all defects in the vehicle once and for all time. In short, the defects were not repaired, plaintiff lost all confidence in the reliability and quality of the VAN, and he lost all confidence in the defendants' ability to repair the VAN.

43. As a result of its inability to repair the VAN's defects, Thor's and FCA's warranties failed of their essential purpose and any limitations contained within the warranty are null and void and Plaintiff is entitled to all applicable legal and equitable remedies in law.

44. Through its advertising and otherwise, the defendants each represented that the VAN was fit for the purpose for which it was designed, that it was a safe and suitable vehicle for

its intended designed use, reliably operable for private transportation and recreational use and the plaintiff acquired the vehicle in reliance upon the belief that the defendants possessed a high degree of skill and judgment.

45. Through its advertising and otherwise, the defendants each represented that the recreational vehicles which it sold were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles are designed and used, and the plaintiff relied on such, but the VAN was not of merchantable quality.

46. These defects, malfunctions, problems, and non-conformities of the VAN severely and substantially impaired its use, safety, and value to the plaintiff.

47. The failure of the defendants to timely fix the vehicle's defects has caused the plaintiff to lose confidence in the reliability of the VAN and in the ability of defendants to repair the VAN's defects.

48. The plaintiff provided each defendant with a reasonable number of opportunities and duration of time to repair the subject vehicle, but they have neglected, failed, refused or otherwise been unable to do so.

49. As a result of the above facts, the defendants each breached their agreements, representations, promises, warranties, and contract of warranty with respect to the subject vehicle.

50. One or more of the defects, malfunctions, problems, and non-conformities with the VAN were covered under the terms of the defendants' agreements, representations, promises,

warranties and/or contract of warranty, and the defendants each failed to repair the vehicle's defects in a reasonable amount of time, thereby diminishing the use, safety and value of the vehicle.

51. Defendants had notices of their breaches of contract, breaches of Thor's and FCA's express and implied representations, promises, warranties, contract of warranty and agreements and of the defective condition of the VAN within a reasonable time.

52. The plaintiff suffered and shall continue to suffer actual, incidental, and consequential damages as a direct and proximate result of the inability or other failures of each defendant to repair, replace the vehicle, or refund its price in an amount that shall continue to increase, including insurance, title, taxes, loan interest and more.

53. Based upon Defendant CW Thornburg's breach of contract by selling to the plaintiff the VAN which is substantially impaired to him and which he has revoked his acceptance of pursuant to Virginia Code §8.2-608, and Thor's and FCA's breach of warranties and contract obligations, the plaintiff is entitled to statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for more than $50,000 and in such amount as may be proven at trial, plus attorney fees and costs.

### COUNT TWO

### BREACH OF EXPRESS AND IMPLIED WARRANTIES UNDER THE MAGNUSON-MOSS WARRANTY ACT
(Against Thor and FCA Only)

54. Plaintiff incorporates the allegations of the above paragraphs as if alleged herein.

55. Plaintiff is a "consumer" as defined in 15 U.S.C. §2301 (3); Thor and FCA fit the definition of "supplier" and "warrantor" as defined in 15 U.S.C. §2301 (4) and (5); and the VAN is a "consumer product" as defined in 15 U.S.C. §2301 (1).

56. Thor does not have a dispute resolution mechanism which meets the requirements of 16 C.F.R. Part 703, promulgated by the Federal Trade Commission pursuant to §2310(a)(2) of the Magnuson-Moss Warranty Act.

57. FCA failed to comply with the procedural rules established by 16 C.F.R §703.2 (e) when written notice of this dispute was mailed to it by Mr. McAuley thus he was not obligated to go through any FCA informal dispute settlement procedure as noted in 15 USC §2310(a)(3) of the Magnuson Moss Warranty Act.

58. The vehicle was manufactured after July 4, 1975 and an express Limited Warranty and an implied warranty of merchantability were given to plaintiff from Thor and FCA as a part of the purchase, warranties which meet the definition of "written warranty" and "implied warranty" contained in 15 U.S.C. §2301 (6) and (7).

59. These Limited Warranties have failed of their essential purpose and these defendants violated the Act due to their inability and/or refusal to repair or replace the nonconformities within a reasonable time, and due to its refusal to provide the plaintiff with a refund. 15 U.S.C. §2304 (a)(1) and (4).

60. Thor and FCA also breached their warranty of merchantability since the VAN, in view of the nonconformities and their inability to correct them, was not fit for the ordinary purpose for which the vehicle was used. 15 U.S.C.§§2308, 2310 (d).

13

61. As a proximate result of the defendant's violations of the Act and breach of its warranties, the plaintiff has been damaged for which the defendant is responsible. 15 U.S.C. §§2304(a) and 2310(d).

## COUNT TWO
## VIOLATION OF THE MOTOR VEHICLE WARRANTY ENFORCEMENT ACT
**(Against FCA Only)**

62. Plaintiff incorporates the allegations of the above paragraphs as if alleged herein.

63. As individually defined in §59.1-207.11, et. seq., of the Code of Virginia, the plaintiff is a "consumer" and "FCA" is "manufacturer, "the VAN's chassis is a "motor vehicle," and the defect or conditions noted regarding the chassis defective steering mechanism and engine failure noted above constitute a "nonconformity" and a "serious safety defect."

64. FCA and its authorized dealer, Shelor, failed to correct the chassis nonconformities after a reasonable number of repair attempts, which has impaired the use and market value and safety of the vehicle to the plaintiff.

65. FCA has refused the plaintiff's demand for damages and a refund, and its actions are in violation of the Motor Vehicle Warranty Enforcement Act, §§59.1-207.11, 207.13, and 207.14, Code of Virginia (1950).

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, or as deemed proper and lawful by the Court as follows.

1. On Count I, statutory and other compensatory damages, remedies, and relief as deemed proper and lawful by the Court, in amount that exceeds $50,000.00 and in such greater amount as may be proven at trial.

      2.      On Count II, statutory and other compensatory damages, remedies, and relief as deemed proper and lawful by the Court, for each violation by Thor or FCA that may be proven at trial.

      3.      On Count III a full refund, and all "collateral charges" as defined, plus expert and legal fees, and costs, in return for the VAN.

      4.      Or, in the alternative to the damages set forth in the prayer above on any appropriate claim, as proven by the evidence and any legal or equitable claim allowed by law for repurchase, rescission, or revocation of acceptance plus all damages and statutory remedies and relief as deemed proper, equitable and lawful by the Court, for each violation which may be proven at trial.

      5.      Plaintiff demands judgment for expert fees, attorney fees and costs, pre and post-judgment interest, and any such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

                                                     Respectfully submitted,

                                                     **BRENNAN W. MCAULEY,**

                                                     _____/s/_____
                                                     John Cole Gayle, Jr., Esq.
                                                   VSB No. 18833
                                                 THE CONSUMER LAW GROUP, P.C.
                                                 1508 Willow Lawn Drive, Suite. 220
                                                 Richmond, VA 23230
                                                 804-282-7900 - Phone
                                                 804-673-0316 - Fax
                                                 jgayle@theconsumerlawgroup.com

Dated:   April 6, 2023