IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRENNAN W. MCAULEY, )
)
        Plaintiff, )
)
v. ) Civil Action No. 3:23-cv-233-HEH
)
FCA US LLC, *et al.*, )
)
        Defendants. )

## MEMORANDUM OPINION
### (Granting Defendants' Motion to Dismiss and Motion to Transfer)

THIS MATTER is before the Court on Defendant Camping World RV Sales, LLC's ("Camping World") Motion to Dismiss (ECF No. 11) and Defendant Thor Motor Coach, Inc.'s ("Thor") Motion to Transfer Case (ECF No. 17) (collectively, the "Motions"), filed on May 5, 2023, and May 8, 2023, respectively. On April 6, 2023, Plaintiff Brennan W. McAuley ("McAuley" or "Plaintiff") filed his Complaint (ECF No. 1) alleging various breaches of contractual and statutory warranties against FCA US LLC ("FCA"), Camping World, and Thor (collectively, "Defendants"). Camping World seeks to dismiss Plaintiff's claim against it pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss at 1.) Thor seeks to transfer this case to the U.S. District Court for the Northern District of Indiana, South Bend Division, pursuant to Rule 12(b)(3) and 28 U.S.C. §§ 1404(a) and 1406(a). (Mot. to Transfer at 1.)

The parties have filed memoranda supporting their respective positions, and the Court heard oral argument on August 3, 2023. For the following reasons, the Motions

will be granted.

## I. BACKGROUND

On November 20, 2022, Plaintiff purchased a 2022 Thor Tellaro camper van from Camping World, a retail sales outlet for Thor for $99,545.25.[1] (Compl. ¶¶ 14–15.) When making this purchase, Plaintiff signed a Buyer's Order (the "Purchase Contract") with Camping World. (*Id.* ¶ 15.) The Purchase Contract contained a warranty disclaimer on the front page that reads as follows:

> **<u>Dealer makes no guarantee or warranty, express or implied.</u>** This vehicle is sold by Dealer "AS-IS" with no Dealer guarantee or warranty, implied or express. Dealer does not affirm or adopt any manufacturer warranty(s) available to this Unit or any of its components. **<u>DEALER HEREBY DISCLAIMS AND EXCLUDES FROM THIS SALE ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS. BUYER(S) ACKNOWLEDGE THIS DISCLAIMER IS MADE IN CAPITALIZED, BOLD AND UNDERLINED FONT AND IS "CONSPICUOUS."</u>**

(Purchase Cont. at 1, ECF No. 1-1.)[2] The back of the Purchase Contract contained a separate warranty disclaimer and limitation of remedies which states:

> **<u>DISCLAIMER OF WARRANTIES AND LIMITATION/EXCLUSION OF REMEDIES. DEALER MAKES NO GUARANTEE OR WARRANTY, EXPRESS OR IMPLIED, AND HEREBY DISCLAIMS AND EXCLUDES THE IMPLIED WARRANTY OF MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE FROM THIS SALE TRANSACTION,</u>**

---

[1] Thor manufactured the van and FCA manufactured the van's 2022 Ram ProMaster chassis. (Compl. ¶¶ 3–4.) FCA provided a warranty on the chassis while Thor provided a warranty on certain parts of the van that were not components of the chassis. (*Id.* ¶ 4.)

[2] For all quotes taken from the contracts between the parties, they appear as formatted in the contracts. However, the size of the font may differ.

2

> <u>AND SUCH WARRANTIES SHALL NOT APPLY TO THIS TRANSACTION OR THE UNIT. BUYER(S) UNDERSTAND AND AGREE THAT DEALER MAKES NO WARRANTY ON THIS UNIT AND THAT ANY PRE-DELIVERY INSPECTION OR SERVICE PERFORMED DOES NOT CONSTITUTE OR CREATE ANY DEALER WARRANTY OF ANY TYPE, EXPRESS OR IMPLIED. BUYER(S) UNDERSTAND AND AGREE THAT ALL TERMS OF THIS AGREEMENT ARE BINDING AND SHALL APPLY IN ALL INSTANCES, EVEN IF BUYER(S) ELECT TO PURCHASE AN EXTENDED SERVICE CONTRACT. BUYER(S) UNDERSTAND AND AGREE THAT THE EXPRESS TERMS OF ANY MANUFACTURERS WRITTEN WARRANTY, TO THE EXTENT ANY EXIST AND APPLY TO THE UNIT, CONTAIN AND CONSTITUTE BUYER(S)' EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS OR DEFECTS THE UNIT MIGHT CONTAIN. BUYER(S) UNDERSTAND AND AGREE THAT ANY OTHER POTENTIALLY AVAILABLE REMEDY, UNDER THE UNIFORM COMMERCIAL CODE OR OTHERWISE, INCLUDING BUT NOT LIMITED TO REJECTION, RESCISSION, OR REVOCATION OF ACCEPTANCE, ARE HEREBY DISCLAIMED BY AND UNAVAILABLE AGAINST DEALER. BUYER(S) UNDERSTAND AND AGREE THAT THE TERMS OF THIS AGREEMENT, INCLUDING ALL DISCLAIMERS OF WARRANTIES AND DAMAGES, ARE "CONSPICUOUS" AND SHALL APPLY UNDER ALL CIRCUMSTANCES, EVEN IF BUYER(S)' AVAILABLE REMEDIES FAIL OF THEIR ESSENTIAL PURPOSE.</u>

(*Id.* ¶ 10.)

During the transaction, Plaintiff also signed a Warranty Registration Form ("the Registration Form") for the Limited Warranty that Thor provided for the vehicle. (Registration Form at 2, ECF No. 18-2.) Both the Limited Warranty and the Registration Form contained a forum selection clause. (*Id.*; Limited Warranty at 17, ECF No. 18-1.) The language in each document is very similar and both state that any claims will be governed by Indiana law and must be brought in an Indiana court. (Registration Form at 2, ECF No. 18-2; Limited Warranty at 17, ECF No. 18-1.) Specifically, the Registration Form states:

> **I UNDERSTAND THAT EXCLUSIVE JURISDICTION FOR DECIDING**

3

LEGAL DISPUTES RELATING TO ALLEGED BREACH OF EXPRESS WARRANTY AND IMPLIED WARRANTIES THAT ARISE BY OPERATION OF LAW AS WELL AS THOSE RELATING TO REPRESENTATIONS OF ANY NATURE MUST BE FILED IN THE COURTS WITHIN THE STATE OF MANUFACTURE, WHICH IS INDIANA. IF THERE IS A CONFLICT BETWEEN THIS FORUM SELECTION CLAUSE AND ANOTHER PARTY'S FORUM SELECTION CLAUSE, THIS FORUM SELECTION CLAUSE CONTROLS.

(Registration Form at 2.)

About two (2) weeks after the purchase, the van began having issues. (Compl. ¶ 16.) Plaintiff alleges that the roof, ceiling fan, and vent leaked, there was damage to the plumbing, and there was a cracked pump and backward filter. (*Id.*) Most notably, the engine failed and the steering locked up while Plaintiff was driving on the interstate. (*Id.*) After this incident, the van was towed to an FCA authorized dealer in Christiansburg, Virginia. (*Id.*) Plaintiff asserts that, despite multiple repair attempts, the van remains unrepaired to this day. (*Id.* ¶¶ 16, 18–19, 22–23.)

Based on these facts, Plaintiff brought the following claims: Breach of Warranty and Revocation of Acceptance against all Defendants (Count I); Breach of Express and Implied Warranties under the Magnuson-Moss Warranty Act against Thor and FCA (Count II); and Violation of the Motor Vehicle Warranty Enforcement Act against FCA (Count III).[3] (*Id.* ¶¶ 28–65.)

---

[3] The Complaint labels both the breach of warranty claim against Thor and FCA and the violation of the Motor Vehicle Warranty Enforcement Act claim as "Count Two." (Compl. at 12, 14.) Regardless, the Court will refer to the third claim as "Count III."

## II. CAMPING WORLD'S MOTION TO DISMISS

### A. Legal Standard

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey*, 706 F.3d at 387) (alteration in original). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 678). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering a motion to dismiss, the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

For a Rule 12(b)(6) motion, courts may consider documents that are either

5

"explicitly incorporated into the complaint by reference" or "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). A court may consider a document not attached to the complaint, when "the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails." *Id.* (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)) (alteration in original).

### B. Analysis

In order to disclaim all implied warranties under Virginia law, a written disclaimer must be "conspicuous" and mention "merchantability." VA. CODE ANN. § 8.2-316. To be conspicuous, it must be "written, displayed, or presented [so] that a reasonable person against whom it is to operate ought to have noticed it." *Id.* § 8.1A-201(b)(10). Modifications to the text, such as capitalization, and contrasting font size, type, or color will serve to make a disclaimer conspicuous. *Id.*; *see Reibold v. Simon Aerials, Inc.*, 859 F. Supp. 193, 195–97 (E.D. Va. 1994) (finding that a disclaimer in "large, all-capitalized print set off from the rest of the text" was valid). "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other." VA. CODE ANN. § 8.2-316.

Revocation of acceptance is a remedy that is generally available. *See id.* § 8.2-

6

608. However, Virginia law allows parties to limit the remedies available for a breach of contract as long as the limitations are not unconscionable. *Id.* § 8.2-719(1) ("[T]he agreement . . . may limit or alter the measure of damages recoverable under this title, as by limiting the buyer's remedies . . . to repair and replacement of nonconforming goods or parts."). Such a limitation becomes void if it "fail[s] of its essential purpose." *Id.*; *see Envirotech Corp. v. Halco Eng'g, Inc.*, 364 S.E.2d 215, 219 (Va. 1988). A written limitation of remedies is not subject to the same conspicuousness requirements that disclaimers of warranties are subject to. *Reibold*, 859 F. Supp. at 197 n.1.

Camping World asserts that it validly disclaimed all warranties and validly limited the remedies available to Plaintiff to those provided in Thor's Manufacturer's Warranty. (Mem. in Supp. of Mot. to Dismiss at 4–7, ECF No. 12.) Plaintiff does not dispute this argument. (Resp. in Opp'n to Mot. to Dismiss at 1–2, ECF No. 19.) Instead, Plaintiff argues that revocation of acceptance is an independent cause of action and can be brought separately from the breach of warranty claim. (*Id.* at 6–10.) Additionally, Plaintiff argues that the limited remedies provided by Camping World fail of their essential purpose. (*Id.* at 10.)

This Court has not found, nor has Plaintiff cited, any Virginia precedent that explicitly states that revocation of acceptance alone creates a cause of action. Conversely, Virginia courts consistently describe revocation of acceptance under the Uniform Commercial Code ("UCC") as a remedy. *See Gasque v. Mooers Motor Car Co., Inc.*, 227 Va. 154, 157, 161–62 (1984) (discussing the "remedy of revocation of

7

acceptance"); *Luddeke v. Amana Refrigeration, Inc.*, 239 Va. 203, 208 (1990) (finding the "*remedy* of revocation of acceptance was time-barred" (emphasis added)); *FinanceAmerica v. Barnaby*, 2 Va. Cir. 33, *4 (1981) ("Revocation of acceptance is an alternate remedy for a dissatisfied consumer under the UCC."). Moreover, in *Blanchette v. Toll Bros, Inc.*, a Virginia Circuit Court dismissed a claim which alleged revocation of acceptance because it failed to state a cause of action. 48 Va. Cir. 386, *1 (1999). Based on this precedent, the Court declines to find that revocation of acceptance is an independent cause of action and will instead treat it as a remedy.

Plaintiff's argument that Camping World's limited remedy fails of its essential purpose is unavailing. When a limited remedy is ineffective, or "fails of its essential purpose," Plaintiff can pursue other remedies under the UCC, including revocation of acceptance. VA. CODE ANN. § 8.2-719(1)(a). Here, a question of fact may exist as to whether Camping World's and Thor's failure to repair the camper causes their limited remedy to fail of its essential purpose. *See Beausoleil v. Peterbilt Motors Co.*, No. 3:10-cv-222, 2010 WL 2365567, at *3 (E.D. Va. June 11, 2010) (finding that a failure to repair after thirty (30) days and seven (7) repair attempts supported a claim that the limited remedy failed of its essential purpose.) However, this is irrelevant, since any factual question that may exist is related to the *remedy*, not the cause of action. Here, the underlying cause of action, Plaintiff's breach of warranty claim against Camping World, fails because both parties agree that Camping World validly disclaimed all warranties. (Resp. in Opp'n to Mot. to Dismiss at 2 ("It [] will not be argued that the disclaimers and

8

limitation of remedy clause at issue is not enforceable because it was not conspicuous.").) Accordingly, Count I will be dismissed as to Defendant Camping World.

### III. Thor's Motion to Transfer

#### A. Legal Standard

Transfer of a civil case in federal court is governed by 28 U.S.C. § 1404(a), which states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When there is no forum clause, the decision to transfer a case rests in the "district court's sound discretion." *Koh v. Microtek Int'l., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). However, when a forum clause is present, a § 1404(a) motion should be denied "[o]nly under extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). In such situations, "[t]he plaintiff's choice of forum and the private interests of the parties are irrelevant." *Waterman v. Thor Motor Coach, Inc.*, No. 3:19-cv-890, 2020 WL 1290595, at *2 (E.D. Va. Mar. 18, 2020); *see Atl. Marine*, 571 U.S. at 63–64. Instead, the plaintiff bears the burden of demonstrating that the forum selection clause should not be enforced because it is against the public interest. *Atl. Marine*, 571 U.S. at 64.

However, *Atlantic Marine* does not address how courts should handle cases with additional complications, such as a third party who is not a party to the forum selection

9

clause. *See In re: Howmedica Osteonics Corp*, 867 F.3d 390, 401 (3d Cir. 2017). The Fourth Circuit has not adopted a test to use when a third party is present in the litigation, but multiple district courts within the Fourth Circuit have opted to apply the test articulated by the Third and Fifth Circuits. *See Waterman*, 2020 WL 1290595, at *2–3; *Amazon.com, Inc. v. WDC Holdings LLC*, No. 1:20-cv-484, 2021 WL 1823892, at *2 (E.D. Va. Feb. 1, 2021); *Chertoff Cap., LLC v. Syversen*, No. 1:20-cv-138, 2020 WL 9348157, at *3 (E.D. Va. Dec. 8, 2020); *Artech Info. Sys., LLC v. ProTek Consulting*, No. PX-17-3468, 2018 WL 3575054, at *3 (D. Md. July 25, 2018). The test requires a court to consider the following factors: "(1) the forum-selection clauses, (2) the private and public interests relevant to non-contracting parties, (3) threshold issues related to severance, and (4) which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests." *In re: Howmedica*, 867 F.3d at 403–04. This Court will likewise apply the test set forth in *Howmedica*.

### B. The Relevant Factors Weigh in Favor of Transferring the Case

Plaintiff contends that transferring this case to the Northern District of Indiana would contravene Virginia's public policy for two reasons: (1) it would preclude Plaintiff from asserting his claim under Virginia's lemon law, Va. Code. Ann. §§ 59.1-207.10, *et seq.*, and (2) it would prevent Plaintiff from obtaining a jury trial. (Resp. in Opp'n to Mot. to Transfer at 8–9, ECF No. 20.) The Court will address both arguments in turn.

Generally, when a diversity action is transferred to another jurisdiction, the state law of the original jurisdiction will continue to govern it. *Atl. Marine*, 571 U.S. at 65

10

(citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)). However, this rule is abrogated when a case is transferred pursuant to a forum selection clause; the choice-of-law rules of the original venue will not transfer with it. *Id.* at 64. Here, Plaintiff brings his lemon law claim against FCA. (Compl. at 14.) This claim is not brought against Thor, nor does Plaintiff allege that Thor is a manufacturer that is liable under Virginia's lemon law. Thus, because there is no forum selection clause between Plaintiff and FCA, Virginia law would continue to apply to this claim if the case is transferred. Plaintiff would not be precluded from asserting his lemon law claim against FCA.

Plaintiff's assertion that he would be deprived of a jury trial if the case were transferred is likewise unconvincing. Though parties in Virginia have a right to a jury trial, a "contractual waiver of the right to a jury trial is enforceable, so long as the underlying contract is valid and enforceable." *HZ Retail LLC v. Mohammed*, 98 Va. Cir. 108, *2 (2018) (citing *Azalea Drive-In Theatre, Inc. v. Sargoy*, 214 S.E.2d 131, 136 (Va. 1975). Plaintiff signed the Registration Form which states that "ANY AND ALL ACTIONS OF ANY KIND RELATED TO OUR MOTORHOME SHALL BE DECIDED BY A JUDGE RATHER THAN A JURY." (Registration Form at 2.) This is a valid jury trial waiver that would apply regardless of whether the case is heard in this Court or in the Northern District of Indiana. Thus, the lack of a jury trial in this case would not contravene Virginia public policy.

Plaintiff emphasizes that there are two (2) forum clauses in this case: one between Plaintiff and Thor and one between Plaintiff and Camping World. (Opp'n to Mot. to

11

Transfer at 4–5.) Plaintiff asserts that, because there are competing forum selection clauses, the Court has discretion to determine which clause to enforce. (*Id.* at 2, 5.) However, because of this Court's dismissal of Defendant Camping World, only one forum selection clause remains—Thor's. Thus, since Defendant FCA is not a party to the forum selection clause, the Court will apply the four-part test developed in *Howmedica* to determine whether to transfer the case.

First, the Court will consider the forum selection clause, assuming that it should be enforced "in all but the most unusual cases." *In re: Howmedica Osteonics*, 867 F.3d at 404 (citing *Atl. Marine*, 571 U.S. at 583) (alterations omitted). Here, there is no argument that Plaintiff and Thor entered into a forum selection clause agreement. Further, as discussed above, there are no unusual circumstances present that would justify the Court refusing to enforce the clause. Therefore, the appropriate venue for Plaintiff's claims against Thor is the Northern District of Indiana. Conversely, Plaintiff and FCA are not bound by a forum selection clause and there is no presumption that the claims against FCA should be transferred.

Second, the Court will consider the private and public interests relevant to the non-contracting parties, namely, FCA. The Court will conduct such an analysis in the same way as when "adjudicating a § 1404(a) transfer motion involving those parties in the absence of any forum-selection clauses." *Id.* "The private interests to consider include the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; . . .

and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Waterman*, 2020 WL 1290595, at *5 (quoting *Atl. Marine*, 571 U.S. at 62 n.6). "[T]he public interests are the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws[;] . . . and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (quoting *Artech Info. Sys.*, 2018 WL 3575054, at *3 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981))) (internal quotations omitted).

FCA has consented to the transfer of jurisdiction and it does not appear that FCA would be prejudiced by such a transfer. (FCA's Suppl. Br. at 1, ECF No. 38.) As Thor points out, FCA operates four (4) plants in Indiana and nearly a tenth of its U.S. workforce is located in Indiana. (Thor's Suppl. Br. at 1–2, ECF No. 42.) Litigating the case in Indiana would not be more inconvenient for FCA than litigating it in Virginia.

Plaintiff, however, would be significantly prejudiced by a transfer of jurisdiction. All the events at issue took place in Virginia and most of the corroborating witnesses and evidence are located in Virginia. (Resp. in Opp'n to Mot. to Transfer at 6.) The only connection that this case has to Indiana is that the camper was assembled at a plant there and Thor's principal place of business is in Indiana. (Reply in Supp. of Mot. to Transfer at 10, ECF No. 24.) Thus, it would be far easier and less expensive for Plaintiff to litigate the case in Virginia.

Both Virginia and Indiana have an interest in their courts deciding this case. As discussed above, most of the events giving rise to this case occurred in Virginia. Additionally, Plaintiff's claim against FCA will be governed by Virginia's lemon law. Likewise, the claims related to Thor's warranty will be governed by Indiana law, pursuant to the choice of law clause contained within the warranty. (*Id.* (citing Limited Warranty at 21).) Because of the burden that would be placed on Plaintiff if the case were transferred and Virginia's strong interest in the case, the second factor weighs against a transfer to the Northern District of Indiana. Since the result of step two conflicts with the result of step one, the Court must proceed to the third step of the analysis and will analyze severance. *See In re: Howmedica Osteonics*, 867 F.3d at 404 ("[I]f the Step One and Step Two analyses point different ways, then the court considers severance.").

Step three requires the Court to consider threshold issues relating to severance, such as whether a party is indispensable, whether jurisdiction and venue is proper in only one court, or whether severance is discretionary. *Id.* at 404–05. Here, FCA is not indispensable under Rule 19(b) because "a judgment against [FCA] without Thor's presence in this case would not have a preclusive effect over Thor." *Waterman*, 2020 WL 1290595, at *6. Moreover, there are no jurisdictional issues related to transfer in this case. FCA consents to the transfer as well as to the Northern District of Indiana exercising personal jurisdiction over it. (FCA's Suppl. Br. at 1.) Because FCA consents, and Plaintiff and Thor have consented to the jurisdiction of the Northern District of

14

Indiana in their forum selection clause, transferring the entire case would be appropriate under 28 U.S.C. § 1404(a). *Atl. Marine*, 571 U.S. at 59 ("[Section 1404(a)] permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation."). FCA also has not contested that the Eastern District of Virginia has personal jurisdiction over it. Thus, because "more than one outcome satisfies the threshold severance constraints," the Court must proceed to step four. *In re: Howmedica*, 867 F.3d at 404.

In the final step of the analysis, the Court evaluates efficiency interests and the non-contracting parties' private interests. *Id.* at 405. The Court then "exercises its discretion . . . in choosing the most appropriate course of action." *Id.* Here, efficiency interests weigh heavily in favor of transferring the case to the Northern District of Indiana. It would avoid duplicative litigation, as Plaintiff's claims against both Thor and FCA involve identical facts. Additionally, a transfer would be in the interest of the non-contracting party, FCA, because it has consented to the transfer. Plaintiff has failed to make a showing that "contracting parties' settled expectations is 'overwhelmingly' outweighed by the countervailing interests."[4] *Id.* at 405 (quoting *Atl. Marine*, 571 U.S. at 67.) Therefore, the Court finds that it is appropriate to grant Thor's Motion to Transfer and to transfer the case in its entirety to the U.S. District Court for the Northern District

---

[4] The Court has heavily weighed the burden to Plaintiff in this case and it is with some regret that the Court must transfer this case to a more burdensome jurisdiction. However, Plaintiff entered into a valid contractual forum selection clause and the relevant factors weigh in favor of enforcing it.

15

of Indiana.

## IV. CONCLUSION

In sum, the Court will grant Camping World's Motion to Dismiss and Thor's Motion to Transfer. Camping World will be dismissed from the case as a defendant and the case will be transferred to the U.S. District Court for the Northern District of Indiana.

An appropriate Order will accompany this Memorandum Opinion.

　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　Henry E. Hudson
　　　　　　　　　　　　　　　Senior United States District Judge

Date: Dec. 22, 2023
Richmond, VA